UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LINDSAY NELSON and DAVID NELSON, <br><br> Plaintiffs, <br><br> v. <br><br> CHONGQING QIULONG TECHNOLOGY CO., LTD dba SURRON; SUR-RON U.S.A, LLC; LUNA CYCLES, LLC; PANASONIC CORPORATION OF NORTH AMERICA dba PANASONIC INDUSTRIAL DEVICES SERVICE COMPANY OF AMERICA; and DOE ENTITIES 1-100, <br><br> Defendants. | Case No. 2:25-cv-00010-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are Defendant Chongqing Qiulong Technology Co., Ltd.'s

(CQT) Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 25) and Plaintiff

Lindsay and David Nelson's Motion for Leave to Conduct Jurisdictional Discovery

(Dkt. 34). The Court heard oral argument on April 24, 2026 and took the matter

under advisement. For the reasons explained below, the Court concludes that

Plaintiffs have not made a prima facie showing that CQT is subject to personal

jurisdiction in Idaho and have not shown that jurisdictional discovery is warranted.

Accordingly, the Court will grant CQT's motion to dismiss and deny Plaintiffs' motion for leave to conduct jurisdictional discovery.

## BACKGROUND[1]

### A.    The Facts

In May 2021, Plaintiffs Lindsay and David Nelson purchased two Surron X Black Edition e-bikes—from Defendant Luna Cycles, LLC's website.[2] Defendant CQT manufactured the bikes in China and sold them to Luna Cycles.

CQT is a Chinese corporation with its principal place of business in China. It does business under the name "Surron." CQT does not have offices, employees, or business operations in Idaho. CQT is not licensed to sell directly to American consumers and does not sell its products to end users in the United States. Instead, CQT "partners with United States-based distributors to sell its products." *Jan. 2026 Liu Dec.* ¶ 3, Dkt. 35-2. There is no evidence that CQT engaged in Idaho-specific marketing or maintained Idaho-based distributors or dealers during the relevant time.

CQT's general counsel Ke Liu explains that CQT sells bikes to its United

---

[1] The facts reported here are drawn from: (1) uncontroverted allegations in the complaint; (2) plaintiff Lindsay Nelson's declaration; (3) CQT general counsel Ke Liu's declarations; and (4) Melanie Baillie's declaration. As will be explained below, however, the Court will disregard many of the exhibits attached to Ms. Baillie's declaration, as those exhibits contain printouts from websites that do not belong to CQT.

[2] Plaintiffs ordered one of the bikes directly; the other was ordered for them by a friend.

States distributors FOB, or "free on board." *See Nov. 2025 Liu Dec.* ¶ 12, Dkt. 25-2. He also states that, to the best of his knowledge, CQT's distributors are obligated to build and maintain "effective dealer networks" in order to promote sales and fully utilize the market potential for CQT's current and former products and parts. *Jan. 2026 Liu Dec.* ¶ 8, Dkt. 35-2. This statement suggests that CQT expects its distributors to develop and promote a nationwide American market for CQT products, rather than operating as purely passive resellers.

Further, even though CQT does not sell bikes directly to end users, those users may download an app from CQT's official website. *See Ex. 16 to Baillie Dec.,* Dkt. 32-2. According to the evidence before the Court, the app allows users to: (1) make an appointment for repair or maintenance services; (2) access "nearby SURRON offline stores and authorized dealer service outlets['] contact information"; (3) monitor battery power, mileage, and driving data; (4) receive prompts when potential faults are detected or maintenance is needed; and (5) receive notifications if the e-bike crashes, "moves abnormally" or the antitheft alarm is triggered. *Id.* at 3 (ECF 137 of 167). There is no evidence that the app enables users to purchase e-bikes directly from CQT. *See generally Nov. 2025 Liu Dec.* ¶ 10, Dkt. 25-2 ("CQT has never made any direct sale of its product to end users in the United States."). Nor are there any allegations that plaintiffs used the app in relation to the events giving rise to this lawsuit.

MEMORANDUM DECISION AND ORDER - 3

As of 2021, when the Nelsons purchased their bikes, CQT did not have any dealers or distributors in Idaho. Luna Cycles was one of CQT's American distributors at the time. *See Nov. 2025 Liu Dec.* ¶ 10. Luna Cycles shipped the bikes from California to plaintiffs' home in Coeur d'Alene, Idaho. Roughly 16 months later, plaintiffs' house and garage caught on fire, resulting in a total loss of their real and personal property. The fire started when a battery in one of the bikes experienced a thermal runaway while parked on its charger inside the garage. *See Compl.* ¶ 5.5, Dkt. 1-2.

Plaintiffs delayed removing the damaged structure and debris after the fire so that their insurer and Surron representatives could inspect. Plaintiff Lindsay Nelson has attested that she "believe[s] that Surron sent one or more representatives to Idaho to inspect our property." *L. Nelson Dec.* ¶ 31, Dkt. 32-1. Mr. Liu, on the other hand, has stated that "[n]o CQT employee has been instructed to visit Idaho." *Nov. 2025 Liu Dec.* ¶ 8, Dkt. 25-2.

## B.    The Lawsuit & CQT's Motion to Dismiss

In October 2024, the Nelsons sued CQT, Luna Cycles, Sur-Ron USA, LLC, and Panasonic Corporation of North America, alleging strict liability and negligence based upon design and manufacturing defects; failure to warn; and breach of warranty. Panasonic removed the case to federal court. All defendants other than CQT have filed answers. *See* Dkts. 4, 10. CQT moves to dismiss,

asserting that the Court lacks personal jurisdiction over it.

## C.    The Briefing Related to CQT's Motion to Dismiss

In responding to CQT's motion to dismiss, plaintiffs' counsel submitted printouts from several websites bearing some variation of the name "Surron," including the following: (1) www.sur-ron.com; (2) www.sur-ron-usa.com; (3) www.shop.sur-ron.com; and (4) www.sur-ron-usa.us.com. *See Baillie Dec., Exs. 2, 10-17 thereto,* Dkts. 32 & 32-2. Based on the contents of these websites, plaintiffs made a variety of factual assertions in their response, most notably including that "SURRON sold its products directly to consumers, including to Idaho consumers." *Response,* Dkt. 31, at 3-4 (citing *Baillie Dec., Ex. 13*). This assertion directly contradicts Mr. Liu's sworn statement that CQT does *not* sell e-bikes directly to American consumers. *See Nov. 2025 Liu Dec.* ¶ 10, Dkt. 25-2 ("CQT has never made any direct sale of its products to end consumers in the United States."); *Jan. 2026 Liu Dec.* ¶ 3, Dkt. 35-2 ("Because CQT was and is not licensed to sell directly to consumers in the United States, it partners with United States-based distributors to sell its products.").

CQT says these sorts of factual discrepancies exist because plaintiffs relied on statements contained in websites that do not belong to CQT. *See Reply,* Dkt. 35, at 1. More specifically, CQT says plaintiffs "repeatedly attribute statements from counterfeit or unaffiliated third-party websites to CQT to manufacture

MEMORANDUM DECISION AND ORDER - 5

jurisdictional contacts." *Id.* Per CQT's general counsel, the "only official CQT websites are https://www.sur-ron.com and https://www.sur-ron.com/us (both of which redirect to https://www.surron.com)." *Jan. 2026 Liu Dec.* ¶ 9, Dkt. 35-2.

Upon receiving plaintiffs' response, CQT attempted to clear things up—and to streamline the factual record—by reaching out to plaintiffs' counsel. CQT's counsel explained that the response brief contained numerous misstatements, including the statement that CQT offered direct-to-consumer sales. *See Jan. 22, 2026 email,* Dkt. 35-1. CQT requested a meet and confer to resolve the issue, but plaintiffs' counsel did not respond.

In light of these circumstances, the Court will disregard factual assertions that rely solely on statements contained in non-CQT websites. More specifically, in terms of the exhibits offered by the plaintiff, the Court will disregard Exhibits 2, 11-14, 17, and most of Exhibit 10.[3] The Court is aware that "[i]f both sides submit affidavits, then '[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (quoting *Boschetto*, 539 F.3d at 1015)). But in this case, the declaration offered by plaintiffs' counsel doesn't

---

[3] Exhibit 10 is a composite exhibit, containing printouts from Surron's official website (www.sur-ron.com) and printouts from various other sites, such as sur-ron-usa.com and sur-ronusa.us.com, and sur-ron.us.com. The Court will disregard all pages except those printouts indicating that they are derived from CQT's official sites.

**MEMORANDUM DECISION AND ORDER - 6**

contain factual statements based on personal knowledge regarding CQT and its operations. Instead, plaintiffs' counsel simply declares that the 20 exhibits attached to her declaration are "true and correct copies" of the relevant documents (typically website printouts). In essence, then, this affidavit functions more like a complaint that makes a series of information-and-belief allegations. CQT has rebutted the majority of these allegations with the declarations from its general counsel.

## ANALYSIS

### A.   CQT's Motion to Dismiss

The Court will first resolve CQT's motion to dismiss and then turn to the Plaintiffs' motion to conduct jurisdictional discovery.

### 1.   Governing Legal Standards

When a defendant moves for dismissal under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). To carry that burden, the plaintiff must show that "the statute of the forum confers personal jurisdiction over the nonresident defendant" and that the exercise of jurisdiction conforms with the federal constitutional principles of due process. *See Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987).

Where, as here, the motion is based on written materials and an evidentiary

hearing has not been conducted,[4] plaintiffs need only establish a prima facie showing of jurisdictional facts to withstand the motion. *Wells Cargo, Inc., v. Transport Ins. Co.,* 676 F. Supp. 2d 1114, 1118 (D. Idaho 2009) (citing *Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995)). The Court must take the plaintiff's uncontroverted allegations in their complaint as true and resolve all genuine disputes in plaintiff's favor. *Id.* (citing *Dole Food Co., Inc., v. Watts,* 303 F.3d 1104, 1108 (9th Cir. 2002)).

Where there is no applicable federal statute governing personal jurisdiction, federal courts apply the law of the state in which the district court sits. *Yahoo! v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc). "Because Idaho's long-arm statute ... allows a broader application of personal jurisdiction than the Due Process Clause, the Court need look only to the Due Process Clause to determine personal jurisdiction." *Hill v. Union Pacific Railroad Co.*, 362 F. Supp. 3d 890, 895 (D. Idaho 2019) (citing *Wells Cargo,* 676 F. Supp. 2d at 1119 ("Thus, under Idaho law, the jurisdictional analysis and federal due process analysis are the same.")).

The Due Process clause of the Fourteenth Amendment requires that a

---

[4] As noted, the Court heard oral argument on April 24, 2026, but this was not an evidentiary hearing.

nonresident defendant have sufficient "minimum contacts" with the forum state so that notions of "fair play and substantial justice" are not offended. *Hill*, at 895 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Under federal law, personal jurisdiction can be either general or specific. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.,* 582 U.S. 255, 262 (2017).

### a.   General Jurisdiction

A court may exercise general jurisdiction only when a defendant's contacts with the forum state are so continuous and systematic as to render them "essentially at home" in the forum state. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (*citing Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Supreme Court has held that alleging general jurisdiction over an out-of-state corporation merely because it is "doing business" in the forum state is "unacceptably grasping." *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014). The Supreme Court held instead that "all-purpose" or "general" personal jurisdiction—the ability to hear claims unrelated to the forum state—is proper only where the corporation is "at home," which is not synonymous with "doing business." *Id.* at 122.

### b.   Specific Jurisdiction

Specific jurisdiction is applicable when a defendant has "certain minimum contacts with the relevant forum such that the maintenance of the suit does not

MEMORANDUM DECISION AND ORDER - 9

offend traditional notions of fair play and substantial justice." *Yahoo! Inc.*, 433 F.3d at 1205 (cleaned up). The plaintiff's claims "must arise out of or relate to the defendant's contacts" with the forum in order for exercise of specific jurisdiction to be proper. *Bristol-Myers,* 582 U.S. at 262 (cleaned up). The Due Process Clause does not permit jurisdiction to be based on contacts with the forum state that are random, fortuitous, or attenuated. *Goodyear*, 564 U.S. at 923; *see also Int'l Shoe*, 326 U.S. at 316 (noting due process requires that the defendant have sufficient minimum contacts with the forum such that hauling the defendant into court in the forum "does not offend traditional notions of fair play and substantial justice.").

The Ninth Circuit uses the following three-part test to determine whether specific jurisdiction exists:

(1)     The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2)     the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3)     the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Yahoo! Inc.*, 433 F.3d at 1205–06 (cleaned up). "Plaintiffs bear the burden of satisfying the first two prongs of the test." *Hill*, 362 F. Supp. 3d at 896 (citing *Menken v. Emm,* 503 F.3d 1050, 1057 (9th Cir. 2007)). If a plaintiff succeeds in

satisfying the first two prongs, the burden then shifts to the defendant to "present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.*

### 2.     Application

The Court clearly does not have general jurisdiction over CQT, so the question is whether specific jurisdiction exists. To resolve that question, the Court will apply the Ninth Circuit's three-pronged framework, as outlined above. Before doing so, however, the Court will address plaintiffs' contention that the Idaho Supreme Court's decision in *Griffin v. St. Michelle Wine Estates Ltd.*, 491 P.3d 619 (Idaho 2021) controls the outcome here.

### *a.*     **Plaintiffs' Reliance on *Griffin* is Misplaced**

*Griffin* held that specific jurisdiction exists if a defendant places products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state (although an isolated occurrence or a single sale will not suffice). *Id.* at 636. Plaintiffs thus contend that that CQT is subject to jurisdiction in Idaho because it placed products into the stream of commerce with the expectation that those products would be sold in Idaho.

But that is not the governing standard. Although this case arises under diversity jurisdiction, the limits of personal jurisdiction are defined by the Due Process Clause of the Fourteenth Amendment of the United States Constitution. And this Court is bound by the Ninth Circuit's interpretation of federal law—not a

MEMORANDUM DECISION AND ORDER - 11

state court's. *See generally RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1275–76 (7th Cir. 1997) ("When determining whether state courts would have jurisdiction, however, federal courts are under no obligation to defer to state court interpretations of federal law."). Thus, while *Griffin* reflects the Idaho Supreme Court's interpretation of federal due process principles, it is not binding on this Court.

And the Ninth Circuit has expressly rejected a pure stream-of-commerce theory. Instead, it requires "something more" than merely placing a product into the stream of commerce, even where the defendant is aware that the product may ultimately reach the forum state. As explained in *LNS Enterprises LLC v. Continental Motors, Inc.*, 22 F.4th 852 (9th Cir. 2022),

> "Placing 'a product into the stream of commerce'—even if the defendant is aware 'that the stream of commerce may or will sweep the product into the forum state'—'does not convert the mere act of placing the product into the stream of commerce into an act' of purposeful availment. *Supreme Court jurisprudence instead "requires 'something more' than the mere placement of a product into a stream of commerce."*

*Id.* at 859-60 (emphasis added; citations omitted); *see also Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.,* 485 F.3d 450, 459 (9th Cir. 2007) (holding that placement of a product into the stream of commerce, without more, is insufficient to establish purposeful availment). Accordingly, Plaintiffs cannot rely on *Griffin's* more permissive approach. The Court will apply the "stream of commerce plus"

framework derived from *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987) and applied by the Ninth Circuit.

### b.    Plaintiffs Have Failed to Establish that CQT Purposefully Availed Itself of the Idaho Market

Under this framework, Plaintiffs must show that CQT engaged in conduct amounting to purposeful availment of the Idaho market—something more than merely placing a product into the stream of commerce. To put a finer point on it, there must be conduct by CQT that is purposefully directed toward Idaho, not just the United States as a whole. *See J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011); *Asahi,* 480 U.S. at 112; *LNS Enters.*, 22 F.4th at 860. The Supreme Court has identified examples of such conduct, including: designing the product for the forum state, advertising in the forum, establishing channels for providing advice to customers in the forum, or marketing the product through a distributor acting as a sales agent in the forum. *Asahi*, 480 U.S. at 112.

Plaintiffs have not identified conduct by CQT that satisfies the "something more" requirement with respect to Idaho. To recap, the record shows the following: CQT is a foreign manufacturer that sells its products to U.S.-based distributors who then sell those products to end users. [5]  Although CQT's U.S.-

---

[5] In the briefing, CQT points out that it sells products "on FOB terms" to its distributors. (Continued)

based distributors are expected to build and maintain "effective dealer networks" to promote CQT's products, *see Jan. 2026 Liu Dec.* ¶ 8, Dkt. 35-2, when plaintiffs purchased their bikes, there were no dealers or distributors located in Idaho. Accordingly, plaintiffs did not, and could not have, purchased their bikes from an Idaho dealer or distributor. Instead, they purchased their e-bike online, from Luna Cycles' website. Luna Cycles is a California company and was one of CQT's U.S. distributors at the time. Luna Cycles shipped the bikes from California to Idaho.

This is not enough to amount to the requisite "something more." The Supreme Court's decision in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011) is particularly instructive. There, the Court held that a foreign manufacturer was not subject to jurisdiction in New Jersey—even though it used a U.S. distributor to market its products and there was evidence that the distributor structured its advertising and sales efforts in accordance with the manufacturer's direction and guidance. *Id.* at 878–89 (2011). The Court explained that such

---

*Mtn. Mem.,* Dkt. 25-1, at 1; *Nov. 2025 Liu Dec.* ¶ 12, Dkt. 25-2. The Court does not find this fact particularly relevant and hasn't taken it into account in determining whether jurisdiction exists. Just because the parties have allocated the risk of loss at a certain point in the supply chain doesn't automatically mean the manufacturer didn't have the requisite minimum contacts with the forum state. *See, e.g., Luv N' care, Ltd. v. Insta-Mix, Inc.,* 438 F.3d 465, 471–72 (5th Cir. 2006) ("Where jurisdiction is otherwise foreseeable, an F.O.B. term cannot deprive the court of jurisdiction over the defendant."); *Cummins-Allison Corp. v. SBM Co.,* No. CV 12-00207 HG KSC, 2013 WL 12198835, at *7 (D. Haw. Jan. 28, 2013) ("Shipment F.O.B. does not automatically shield a defendant from specific jurisdiction.").

MEMORANDUM DECISION AND ORDER - 14

evidence may show an intent to serve the United States market as a whole, but it does not establish that the manufacturer purposefully availed itself of any particular state's market. *Id.* at 886. As the Supreme Court put it, "Here the question concerns the authority of a New Jersey state court to exercise jurisdiction, so it is petitioner's [the manufacturer's] purposeful contacts with New Jersey, *not with the United States*, that alone are relevant." *Id.* (emphasis added).

The same is true here. Even assuming CQT provided some level of direction or guidance to its U.S. distributors, that would establish, at most, an intent to serve the American market—not the Idaho market specifically. Plaintiffs have not shown that CQT designed its products specifically for Idaho or used a distributor acting as its sales agent in Idaho. Nor have Plaintiffs shown that CQT directed its distributors to target Idaho, controlled their marketing or sales activities in Idaho, or otherwise structured its distribution system to serve Idaho in particular. To the contrary, and as already noted above, the record reflects that during the relevant time, there were no CQT distributors or dealers in Idaho.[6]

---

[6] The Court evaluates personal jurisdiction based on a defendant's contacts with the forum at the time of the underlying events, not based on later developments. Thus, any subsequent expansion of distribution networks or retail presence in Idaho is not relevant to the jurisdictional analysis.

In sum, plaintiffs have failed to establish the "something more" necessary to subject CQT to jurisdiction in Idaho. And their reliance on *Thomas v. American Sports Co.,* No. 4:20-cv-00565-DCN, 2022 WL 1063721 (D. Idaho Apr. 8, 2022) is misplaced. In *Thomas,* another judge in this district applied the stream-of-commerce-plus test and concluded that French manufacturer Salomon was subject to jurisdiction in Idaho. True, there are some similarities between the two cases. Most significantly, both involved foreign manufacturers using U.S.-based distributors. But the facts diverge from there. In *Thomas,* the foreign manufacturer maintained a website where it sold ski equipment directly to consumers. Additionally, in *Thomas,* Idaho retailers carried the Salomon product at issue. Indeed, the plaintiff purchased the allegedly defective product from a brick-and-mortar store in Idaho. Here, by contrast, CQT does not sell its products directly to Idaho consumers through its website and there were no dealers or distributors located in Idaho during the relevant time.

Plaintiffs also point to CQT's mobile application as evidence of contacts with the forum. The evidence before the Court shows that the mobile application allows users to monitor their e-bikes, receive maintenance notifications, and locate service providers. But Plaintiffs have not shown that these tools enable direct sales, reflect targeted advertising toward Idaho, or demonstrate that CQT exercised control over dealers in this forum. (Indeed, there were no dealers in Idaho during

MEMORANDUM DECISION AND ORDER - 16

the relevant time period.) Further, Plaintiffs have not shown that their claims arise out of or relate to the mobile application. Plaintiffs' claims stem from the alleged failure of a battery in an e-bike purchased through a distributor—not from any interaction with CQT's mobile application or its website.

In sum, Plaintiffs have failed to satisfy the first two prongs of the Ninth Circuit's specific jurisdiction test. They have not shown that CQT purposefully availed itself of the privilege of conducting activities in Idaho, nor have they shown that their claims arise out of or relate to any Idaho-directed conduct by CQT. Because Plaintiffs have not met their burden on these threshold requirements, the Court need not address whether the exercise of jurisdiction would be reasonable. CQT's motion to dismiss will be granted.

## B.  Plaintiffs' Motion for Jurisdictional Discovery

Plaintiffs alternatively request leave to conduct jurisdictional discovery. District courts have broad discretion to permit or deny jurisdictional discovery. Although discovery may be appropriate where pertinent facts are controverted or a more complete record is necessary, it is not warranted where the request rests on speculation.

Here, Plaintiffs have not identified facts that discovery is likely to uncover that would establish personal jurisdiction. Instead, they speculate that further inquiry into CQT's relationship with its distributors might reveal additional forum

contacts.

That is insufficient. Plaintiffs have not made a colorable showing of jurisdiction, and the existing record does not suggest that discovery would alter the Court's conclusion. Allowing discovery under these circumstances would amount to a fishing expedition. *Accord Valandra v. Sur-ron USA LLC*, No. CV-23-02665-PHX-DWL, 2025 WL 3458553, at *6-7 (D. Ariz. Dec. 2, 2025) (denying jurisdictional discovery on similar facts). Accordingly, Plaintiffs' motion for jurisdictional discovery will be denied.

## ORDER

**IT IS ORDERED that:**

1.      Defendant CQT's Motion to Dismiss (Dkt. 25) is **GRANTED**. Defendant CQT is **DISMISSED WITHOUT PREJUDICE.**

2.      Plaintiffs' Motion for Jurisdictional Discovery (Dkt. 34) is **DENIED**.



DATED: June 5, 2026

_____
B. Lynn Winmill
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 18